UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

WILLIAM CUCCIA, as parent and natural guardian of WILLIAM CUCCIA, JR., and individually,

Plaintiffs

v.

Civil No. 1:03-CV-574 (NPM/RFT)

BRASS EAGLE, INC.,

Defendant.

---

RANDOLPH F. TREECE
United States Magistrate Judge

MEMORANDUM-DECISION AND ORDER

In this case, procedural frictions on the service of expert reports, particularly the Plaintiffs' reports, fit squarely within the adage, "the return of a bad penny." This Court, after no less than two written decisions based upon scores of letter-memoranda, several extensions of the discovery deadline, and several more telephonic conferences, has arrived at the conclusion that the discovery process has been vitiated beyond purposeful recognition and Congress's intentions when it enacted, and later amended, the Federal Rules of Civil Procedure. Those intentions were to streamline a marred process into a uniform schematic of reasonable procedural practices. The recriminations that

we are about to address must fall squarely upon the shoulders of all of the litigators, and not just one party. For the reasons that follow, all parties should accept some blame for what we are about to discuss. The parties' failure to adhere to the wisdom and the time table set forth in both the Federal Rules of Civil Procedure and the Uniform Pre-Trial Scheduling Order (UPTSO), and the their attempts to be overly creative to serve their own purposes by notoriously freelancing in the disclosure process has generated this cauldron of procedural litigation. A review of the case docket will highlight our point.

On September 4, 2003, after the Rule 16 Conference, this Court issued a UPTSO in this product liability case, which, *inter alia*, set the discovery deadline as June 4, 2004. Dkt. No. 8. The Court was not alerted to any problems with discovery until it received a belated request to extend the discovery deadline a week after it had expired. Dkt. No. 16, Pls.' Lt., dated June 10, 2004. However, in conjunction with an attempt to submit comprehensive disclosure (answering all of the requests at one time) to the Defendants albeit tardily, on April 7, 2004, the Plaintiffs provided a barely functional expert disclosure.[1] The expert

[1] Although the issue has never been raised nor has its adequacy been vigorously challenged, the Plaintiffs' April 7, 2004 Expert Disclosure may not have complied with the dictates of FED. R. CIV. P. 26(a)(2)(B) in several respects, but mostly in that it was not accompanied by a written report prepared and signed by the expert witness nor did it set forth the data or information considered by the witness. Nonetheless, this thin reed expert disclosure gave notice that the Plaintiffs had retained an expert and the expert's global opinions about the case. Furthermore, ignoring the parties' nonchalant adherence to the scheduling and discovery deadlines for a moment, had the Plaintiffs complied with either the Federal Rules or the UPTSO, the expert disclosure should have been served on March 8,

disclosure's adequacy notwithstanding, the Defendant did not make any effort to serve any expert disclosure.[2] Putting aside the repeated representations by the parties that they were assiduously pursuing discovery, although the record before the Court seemed to suggest otherwise, this Court granted the requested relief and extended the discovery deadline to September 10, 2004. Dkt. No. 16.

The requested extension turned out not to be ample enough, although more representations of discovery diligence were proffered, and the Court had to consider the parties' joint application for another extension. *See* Dkt. Nos. 18 & 19. In the interim, nothing occurred in reference to expert disclosure, with neither party either updating expert disclosure or even providing any. It is curious to note that when they made their request for another extension - since it is an issue in our current discussion - the parties knew then, although they should have known it earlier, that a disassembly of the paint gun was necessary in order to render a comprehensive analysis of product liability. Dkt. No. 19, Def.'s Lt., dated Sept. 8, 2004. Once again, extending further courtesies to the parties, this Court amended the UPTSO and extended the discovery deadline to December

---

2004. FED. R. CIV. P. 26(a)(2)(C); *see also* Dkt. No. 8.

[2] Here is another issue the parties neglected to raise with the Court at any time during the Pre-Trial litigation stage. Had the Defendant acceded to either the Federal Rules or the UPTSO their Expert Disclosure would have been due on April 20, 2004, all parties' rebuttal expert disclosure would have been due on May 5, 2004, and depositions of the respective experts would have occurred within the following thirty (30) days.

31, 2004. Dkt. No. 20, Order, dated Sept. 9, 2004.

At this juncture, another glitch in the discovery process developed, which was confounded by the parties' laxity in heeding the approaching discovery deadline. As the litigants approached the extended discovery deadline of December 31, 2004, the parties, once again, ignored the sagacity of the Federal Rules of Civil Procedure, and ad libbed on their respective expert disclosures. This improvisation begins the *sine qua non* for the current debate. Such digression from the statutory time line was a grave mistake, which by now should be apparent to all. Without the benefit of an exchange of written expert reports, and contrary to the Federal Rules, on December 21, 2004, nine days prior to the expiration of the discovery deadline, the parties decided to embark upon their first and ostensibly only inspection of the paint gun in question, which required disassemblence of that gun, and to conduct depositions post haste.[3] Dkt. No. 27, Order, dated Feb. 14, 2005.

Responding to the Plaintiffs' request for additional time to submit a rebuttal expert report, conceivably triggered by whatever transpired at the

---

[3] Federal Rule 26(b)(4)(A) reads as follows:

> A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition **shall not be conducted until after the report is provided**.

(emphasis added).

This Court is uncertain, from the record provided, whether the Defendant had actually served an expert report after the depositions that were held on December 21, 2004.

depositions, this Court, on January 19, 2005, held a telephonic conference to consider the issue. Dkt. No. 27 at p. 1. Thereafter, permission was given to the parties to submit letter-memorandums to expound upon either their support or opposition to another expansion of the discovery deadline. *See* Dkt. Nos. 22 & 23. The Plaintiffs wanted or needed another expert because his current expert, James M. Gannalo, was not a design expert:

> [t]he purpose of the additional consultation was to clarify, from another expert's viewpoint, the existence of a safer alternative design with respect to the manner in which a pistol-grip assembly is secured/affixed to the mainframe receiver of the firearm as utilized by other manufacturers.

Dkt. No. 26, Pls.' Lt., dated Feb. 9, 2005, at p. 1, ¶ 3.

In the final analysis, after the issue had been fully briefed, the Court granted Plaintiffs' application to serve a rebuttal expert report "consistent with the requirement of FED. R. CIV. P. 26(a)(2) and the Uniform Pre-Trial Scheduling Order[. ]" Dkt. No. 27 at p. 10. This license to serve a rebuttal expert report was qualified by the Court when we observed, "[t]o be emphatically clear, the Court's position is that this expert report can only serve as a rebuttal to the Defendant's expert. No new theories or postulations shall be permitted unless they directly address the Defendant's expert's opinion." *Id.* at p. 10 n.2.[4]

[4] Moreover, this Court amended the UPTSO, again, and set up further protocol on expert disclosure:

> that the Uniform Pre-Trial Scheduling Order is amended, once again, as follows:
> (1) the Plaintiffs shall serve his Rebuttal Expert Report within thirty (30) days of the

On March 14, 2005, much to the Defendant's surprise, Plaintiffs served Defendant with two expert reports. First, without objection, the Rebuttal Expert Report authored by Michael Britt, a new expert, is accepted as such. However, a contest ensues because of a second Expert Report issued by James M. Gannalo. *See* Dkt. No. 29, Defs.' Lt., dated Apr. 5, 2005. With regard to this subsequent Expert Report from Mr. Gannalo, the Defendant exclaims that this report is riddled with new theories, neither previously expressed nor hinted at in either the prior expert disclosure, dated April 7, 2004, or Gannolo's deposition on December 21, 2004. *Id.* In their view, Gannolo's new report contains

> new theories and postulations regarding alternative feasible designs; comparison with other manufacturers' designs; discussion of fastening devices including clevis pins, cotter pins, tapered pins, rolled spring pins, flush mounted vertical screws, and horizontal mounted fasteners; and comparison with other Brass Eagle products identified as "Marauder", "Avenger" and "Afterburner".

*Id.* at p. 2.

Relying upon this Court's caveat to the Plaintiffs not to interject new theories or postulations when submitting the rebuttal report, the Defendant asks this Court to

---

> date of this Order; (2) the Defendant, if it so wishes, shall serve its Rebuttable Expert Report within thirty (30) days of receiving the Plaintiffs's Rebuttal Report; (3) after the exchange of Rebuttal Expert Reports, the parties may, if they wish, conduct depositions of the rebuttal experts, except, the Defendant shall have as a right to depose the Plaintiffs's rebuttal expert at the Plaintiffs's expense. These depositions shall occur within fifteen (15) days of the exchange of the Rebuttable Expert Reports; and, (4) the motion filing deadline shall be July 15, 2005.

Dkt. No. 27 at pp. 10-11.

strike Gannolo's Report for being beyond the boundaries of disclosure set by the Court. *Id*. Therefore, our first mission is to determine the true identity of Gannolo's second report.

A rebuttal report is permitted under the Federal Rules if it is "intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B) . . . ." FED. R. CIV. P. 26(a)(2)(C). Unexpectedly, the parties arrived at a consensus on whether this is a rebuttal expert report, but for different reasons. Succinctly, primarily for legal reasons, the Defendant exhorts that under no legal critique could Gannolo's new report constitute a rebuttal report. Dkt. No. 30, Defs.' Lt., dated Apr. 12, 2005. On the other hand, the Plaintiffs concede that Gannolo's latest report is not a rebutting report, since Britt's report is the actual Rebuttal Report, but rather, it is a supplemental report pursuant to FED. R. CIV. P. 26(e). Dkt. No. 31, Pls.' Lt., dated Apr. 12, 2005. No matter what rationale this Court adopts, we concur with both parties that Gannolo's subsequent report does not constitute a rebuttable report as contemplated under FED. R. CIV. P. 26(a)(2)(c), and, if it did, it would not only be in violation of the Federal Rules but also this Court's Order dated

February 14, 2005.[5] Laying to rest that this not is a rebuttable report, it would then behoove us to determine if this Report is a supplemental report, as represented by the Plaintiffs, and, if so, then answer the corollary to that point, which is, is the Report timely.

Without reservation, the parties have an absolute responsibility to either amend or supplement their discovery, which duty incontrovertibly includes expert reports.[6] To be very precise, the Federal Rules are pellucid in that "[t]he parties shall supplement these [expert reports] when required under subdivision (e)(1)." FED. R. CIV. P. 26(a)(2)(C); *see also* 6 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 26.130[1] (3d ed. 2005) (the duty to supplement or amend extends to information provided through experts). The duty to

---

[5] Although, this Court agrees with the observation that the difference between an amended and supplemental expert report "can be a fine one." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002).

[6] Rule 26(e) states in full:

A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

**(1)** A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

**(2)** A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

supplement becomes more keen when it is discovered that the previous responses or the information disclosed is in a material respect "incomplete or incorrect." *Wechsler v. Hunt Health Sys. Ltd.*, 2003 WL 22358807, at *14 (S.D.N.Y. Oct. 16, 2003) (citations omitted); FED. R. CIV. P. 26 Advisory Committee Notes 1993 Amendment. We accept as a given that the purpose of this, as well as all of the other discovery procedures, "is to narrow the issues, to *eliminate surprise*, and to achieve substantial justice" and "must not be allowed to degenerate into a game of evasion." *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999) (emphasis in original) (citations omitted). Therefore, in the unwieldy field of expert reports in which opinions are likely, if not expected, to be modified or fluctuate throughout the litigation, such as those that may expressed in subsequent depositions, a duty to supplement is engendered and must be fulfilled. *Licciardi v. TIG Ins. Group*, 140 F.3d 357, 363 (1st Cir. 1998) (recognizing that expert testimony is a "traditionally troublesome area concerning last-minute changes"); 6 MOORE'S FEDERAL PRACTICE § 26.130[2]; FED. R. CIV. P. 26 Advisory Committee Notes 1970 & 1993 Amendments ("New information renders the prior responses substantially incomplete."). If not fulfilled as mandated by the Federal Rules, the impositions of sanctions, which may include exclusion of the expert report, is implicit.

*Licciardi*, 140 F.3d at 363; *see also Tenbarge*, 190 F.3d at 865; 6 MOORE'S FEDERAL PRACTICE § 26.132[1] & 26.132[7][d].

Here we have an emaciated initial Expert Report from the Plaintiffs, which does not completely comply with Federal Rule 26(a)(2)(B) in that: (1) the report fails to contain a comprehensive statement of all of the expert's opinions; (2) there is a profound absence of data or information considered by the expert in rendering his opinions; (3) those exhibits which are to be used at trial were not attached; and (4) the amount of compensation to be paid to Gannolo and a listing of any other cases in which he has testified cannot be found within the four corners of this initial report. Nonetheless, the adequacy of this report has gone unchallenged. *See supra* n.1. Furthermore, we have Gannolo's deposition in which more information relative to his theories of liability was explored and he became privy to the Defendant's experts' findings and opinions as well. Under these circumstances, omissions in the original report and the new data gleaned through these depositions obviously requires the Plaintiffs to supplement their meager report so that the Defendant is acutely aware of all of the facts and opinions confronting them. *Wechsler*, 2003 WL 22358807, at *15 & 16 (allowing a supplemental report on the basis of information acquired after submitting original report and to correct any omission). The frugality of facts

and explicit opinions in the initial expert reports begs for supplementation.

James M. Gannalo's Expert Report, dated March 14, 2005, is far more comprehensive in every respect than his initial report. The March 14, 2005 Report relies heavily on all of the new information Gannolo learned through his and other depositions, and, as much, from further study. Because of its conspicuous completeness, the Defendant has every right to complain that it is an endeavor to bolster a flawed initial report, or better yet, be a guise for a new report. Dkt. No. 30, Def.'s Lt., dated Apr. 12, 2005, at p. 2; Dkt. No. 32, Def.'s Lt., dated Apr. 13, 2005. Underlying their distress is the assertion that the Plaintiffs are cleverly bootstrapping upon subsequent events and interposing unfairly fresh notions of liability that Gannolo had not fully considered. Responding to this allegation, the Plaintiffs retort that Gannolo's latest report does not "substantially deviate" from the initial report nor his deposition. Dkt. No. 31, Pls.' Lt., dated Apr. 12, 2005, at p. 2. But, once again, we must note that it is fine distinction between the generation of a new report and providing the critical update mandated by the Federal Rules. With that said, however, the March 14th Report is replete with mounds of new information, more embellished theories of product liability, and a new theory of either a lack of or inadequate warnings. It cannot be gainsaid that the Defendant is surprised by the report's

many turn of events and thus are consequently prejudiced.

However, excluding expert testimony is a drastic remedy, which courts loathe to do. *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2003 WL 22471909, at *1-2 (S.D.N.Y. Oct. 31, 2003) (citing, *inter alia*, *RMED Int'l, Inc.*, 2002 WL 31780188, at *3 & *Wechsler,* 2003 WL 22358807, at *14). Even when there is not strict adherence to the Federal Rules, "excluding expert testimony can 'frustrate the Federal Rules' overarching objective of doing substantial justice to [the] litigants.'" *Sealed Plaintiffs # £1 v. Sealed Defendant #£1*, 221 F.R.D. 367, 368-69 (N.D.N.Y. 2004) (quoting *In re Kreta Shipping, S.A.,* 181 F.R.D. 273, 277 (S.D.N.Y. 1998)); *see also Cartier, Inc.,* 2003 WL 22471909, at *1 (citation omitted); *Wechsler*, 2003 WL 22358807, at *14 (citation omitted). Before exercising this dramatic relief, the Court must consider the following factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."[7] *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir.

[7] There are courts within the Second Circuit that have added bad faith as another factor to be considered. *Wechsler,* 2003 WL 22358807, at *14 (citing *RMED Int'l, Inc.,* 2002 WL 31780188, at *3). Both parties discuss this factor, but, this Court, based upon what has been disclosed, is disinclined to give this factor any significant weight.

1997) (citation omitted) (cited in *Seal Plaintiffs #£1*, 221 F.R.D. at 369).

With regard to the above factors, the Plaintiffs's explanation that this supplemental expert report is timely in that the last moment such supplementation may occur is thirty (30) days prior to trial and here it is being is being served prior to dispositive motions is credible. FED. R. CIV. P. 26(a)(3). Since this case is at a stage where a trial date is not yet contemplated, there is a safe haven in terms of time. As with all product liability cases, which is true of all modern litigation, expert testimony is a vital linchpin for the Plaintiffs' case. Even though the Defendant deserves some blame for this entangled and convoluted approach to expert disclosure, they nonetheless have been prejudiced by the interjection of new theories by Mr. Gannolo's latest report on liability themes, which had already been scantily provided in his initial report. *Aventis Envtl. Sci. USA LP v. Scotts Co.*, 2005 WL 82133, at *21 (S.D.N.Y. Jan. 13, 2005) (finding that if the expert had created a "new equation" his expert would be precluded, however, there had been only a change in the facts or factors to be weighed in the equation, and therefore, no preclusion). Yet, we have the ability to rectify this prejudice by granting a continuance. With a continuance, the Court can do substantial justice to all parties. 6 MOORE'S FEDERAL PRACTICE § 26.132[7][c] (stating the court may give the aggrieved party an opportunity to

cure all potential prejudice.)

We cannot ignore the cogent observation that a continuance is not effective in every circumstance and we do not want our action to encourage litigants to ignore scheduling orders with impunity or unwittingly reap the benefit of their belated compliance with the Federal Rules, local rules, and court orders. *Licciardi,* 140 F.3d at 366 & 367. However, in this case, we also submit that a continuance is preferable to an exclusion of important expert testimony, especially when time permits a corrective course. Prejudice to the Defendant does not overweigh the importance of this witness and we have caught this problem within a meaningful period prior to trial.[8] In the interim, the prejudice can be completely dissipated by permitting the Defendant an opportunity to depose Gannolo, for the second time and on his new theories, if they so desire. *Cartier, Inc.,* 2003 WL 22471909, at * 2 (citing, *inter alia*, *RMED Int'l, Inc.,* 2002 WL 31780188, at *4). And, due to the fact that the Plaintiffs' last minute enhancement of their expert's report is the cause of the prejudice to the Defendant, which we are attempting to cure, the Plaintiffs cannot escape

---

[8] The Defendant wishes that this Court would adopt the ruling in *Bard v. Bd. of Educ. of the City of New York*, 2002 WL 188471 (S.D.N.Y. Feb. 6, 2002). The *Bard* Court pursued another remedy by not allowing the Plaintiffs to supplement his expert report after the expiration of the scheduling order. This Court does not necessarily disagree with the ruling, but it is within our inherent discretion to manage discovery in a way that is fitting and proper for each individual case. We remain unpersuaded by *Bard* to avoid a drastic remedy and promote substantial justice under our facts. Maybe, under different circumstances when there is a less flexible time frame confronting us, the Court would be persuaded by *Bard*.

unscathed, and some further consequence is in order. Much like this Court did when it granted the Plaintiffs an opportunity to serve a rebuttal report, the Plaintiffs will have to bear the cost of any deposition the Defendant wishes to pursue.

**CONCLUSION**

Based upon the foregoing, the Defendant's application to exclude Mr. Gannolo's Expert Report, dated March 14, 2005, is **Denied**. The Defendant shall have the right to depose Mr. Gannolo on his latest report and Michael Britt's on his rebuttal report at the Plaintiffs's expense.[9] The Defendant may serve a Rebuttal Report to Mr. Gannolo's March 2005 Report on or before August 1, 2005. The depositions, if pursued, shall occur on or before August 15, 2005. Failure to conduct the depositions by this date will be deemed a waiver of this right. If the Plaintiffs fail to produce the experts timely for the depositions, they will be subject to SANCTIONS, WHICH MAY INCLUDE EXCLUSION OF THEIR RESPECTIVE TESTIMONY. The Motion Filing Deadline shall be September 30, 2005. All other provisions of the Uniform Pre-Trial Scheduling Order shall remain in effect, and no further requests for extensions of the

[9] *See* Dkt. No. 27, Order, dated Feb. 14, 2005, at p. 11.

Scheduling Order will be considered.[10]

SO ORDERED.

July 13, 2005
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

[10] This Order does not foreclose the Defendant from making a motion *in limine* to the trial court to strike Gannolo's testimony based upon his lack of qualification to render an opinion as to the product design. The crux of Gannolo's March 2005 Report is that it is improperly designed for a host of reasons. We cannot ignore that the primary reason this Court gave the Plaintiffs an opportunity to secure another expert in order to submit a rebuttal report was that Gannolo was not a design expert, and certain clarification was required that Gannolo was unable to render. *See* Dkt. No. 26, Pls.' Lt., dated Feb. 9, 2005, at p. 1, ¶ 3; Dkt. No. 27 at p. 4. At his deposition held on December 21, 2004, Mr. Gannolo repeatedly confirmed his lack of gun product design expertise. *See, inter alia*, Deposition at pp. 19 (not involved in the design of guns), 30, 31, 33, 41, 51 (does not understand design and would defer to others), 52, 62 (not an expert in design), 63 (not familiar with valve system), 64 (would rely on the opinions of the Defendant' two experts), 73 (would defer on short stroke), and 85 (cannot say the screw and lock nut assembly itself was an appropriate design choice). Furthermore, this report may be the subject of a *Daubert* hearing, which in the Northern District of New York is properly held before the District Court. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merell Dow Pharm., Inc.*, 509 U.S. 579 (1993).